UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE MORALES,

                    Plaintiff,

    -v-

CITY OF NEW YORK, *et al.*,

                   Defendants.

No. 13-cv-7667 (RJS)
<u>OPINION AND ORDER</u>

---

<u>RICHARD J. SULLIVAN</u>, District Judge:

      Plaintiff Jose Morales, who is currently incarcerated and proceeding *pro se*, brings this action alleging violations of the Fourth Amendment of the United States Constitution, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act against the City of New York (the "City"), Lieutenant Jason Harris, and Detective Frank Altieri (together with Harris, the "Officer Defendants").  Now before the Court is Defendants' motion for summary judgment.  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I. B<small>ACKGROUND</small>

A.  Facts[1]

      On October 1, 2013 at approximately 2:20 p.m., Plaintiff, who is paraplegic and wheelchair-bound, sold ten bags of heroin to an undercover police officer in the vicinity of 15 Avenue D in Manhattan.  (56.1 Stmt. ¶¶ 1, 5; *see also* Doc. No. 48-1 ("Morales Dep.") at 31:6–9; Doc. No. 48-2 ("Altieri Aff.") ¶¶ 5–6.)  Altieri, Harris, and other police officers soon arrived on

---

[1] The following facts are drawn from Defendants' unopposed Local Civil Rule 56.1 Statement.  (Doc. No. 49 ("56.1 Statement" or "56.1 Stmt.").)  In deciding Defendants' motion for summary judgment, the Court has also considered Plaintiff's affidavit in opposition to summary judgment (Doc. No. 58 ("Opp'n")) and has conducted an independent review of the record, notwithstanding Plaintiff's failure to submit a statement compliant with Local Civil Rule 56.1.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d. Cir. 2001) (noting that a district court "may in its discretion opt to conduct an assiduous review of the record even where" a party has failed to comply with Local Civil Rule 56.1 (internal quotation marks omitted)).

the scene and arrested Plaintiff.  (56.1 Stmt. ¶ 4; *see also* Altieri Aff. ¶¶ 8–10.)  Upon arresting Plaintiff, Altieri searched Plaintiff's motorized wheelchair, in which Altieri observed and seized sixteen additional bags of heroin hidden in the wheelchair's cushion.  (56.1 Stmt. ¶ 6; *see also* Altieri Aff. ¶ 12; Morales Dep. 32:10–24.)

Prior to being removed from his wheelchair, Plaintiff informed the police that he would "need special transportation because of his paraplegic condition."  (Opp'n 4.)  Altieri attests, and Plaintiff does not dispute, that Plaintiff's wheelchair would not fit into the available space inside the van that had arrived to transport Plaintiff to the police station and was too heavy to be manually lifted into the van.  (Altieri Aff. ¶ 11.)  Thus, the Officer Defendants removed Plaintiff from his wheelchair and placed him on the floor of the police van unsecured by a seat belt or any other safety equipment.  (Opp'n 4; Morales Dep. 38:3–8; *see also* 56.1 Stmt. ¶ 7.)  Plaintiff was then transported in the van to the Ninth Police Precinct, which is located at 321 East 5th Street in Manhattan, less than a mile from the site of Plaintiff's arrest.  Although Plaintiff claims that he was "left to bounce around on the floor" of the police van because of the lack of safety equipment (Opp'n 4), Plaintiff does not claim, either in the Complaint or in his submission in opposition to summary judgment, that he suffered any physical injuries as a result of this brief ride to the Ninth Precinct (*see generally* Doc. Nos 1, 58).

While Plaintiff was being transported to the police station, Altieri went immediately to Plaintiff's residence, Barrier Free Living, an assisted living facility for disabled persons located at 270 East 2nd Street in Manhattan, on the same city block as the site of Plaintiff's arrest, in order to retrieve another wheelchair for Plaintiff to use while he was at the police station.  (56.1 Stmt. ¶¶ 7–10; *see also* Altieri Aff. ¶¶ 14–16.)  An employee of Barrier Free Living provided Altieri with a non-motorized wheelchair for Plaintiff's use.  Altieri attests, and Plaintiff does not dispute,

that the wheelchair appeared stable and to be without defects.  (56.1 Stmt. ¶ 11; Altieri Aff. 17–18; *see also* Morales Dep. 41:6–14.)

Altieri then brought the wheelchair from Barrier Free Living to the police van holding Plaintiff, and the Officer Defendants subsequently removed Plaintiff from the van and began to place him in the substitute wheelchair.  (56.1 Stmt. ¶¶ 12–13; *see also* Morales Dep. 41:11–14; Altieri Aff. ¶¶ 18–20; Opp'n 4.)  However, the stitching on the seat of the substitute wheelchair began to give out, and Plaintiff fell through the substitute wheelchair.  (56.1 Stmt. ¶13; *see also* Morales Dep. 40:16–41:14; Altieri Aff. ¶¶ 20–21; Opp'n 4.)  Altieri then helped remove Plaintiff from the substitute wheelchair and place him in his motorized wheelchair, which a different police officer had transported separately to the police station.  (56.1 Stmt. ¶¶ 9, 15; Altieri Aff. ¶ 22–23.)  Plaintiff was then brought into the Ninth Precinct for arrest processing.  (56.1 Stmt. ¶ 15; *see also* Altieri Aff. ¶¶ 22–24.)

In his opposition submission, Plaintiff asserts that he "suffered neck and back injuries" and "complained of pain and received medication for [n]eck and [b]ack pain" as a result of his fall through the wheelchair.  (Opp'n 4; *see also* Morales Dep. 45:14–24.)  However, on the night of his arrest, after Plaintiff was escorted to Bellevue Hospital at approximately 10:00 p.m. for a "routine general medical examination" and "medical clearance for pre-arraignment," he informed the Bellevue staff that he was not suffering any pain at the time of his visit.  (56.1 Stmt. ¶ 17; *see also* Doc. No. 48-7 at 2, 4, 6, 9.)  Furthermore, Plaintiff has not introduced any other evidence to substantiate his claims that he was seriously injured as a result of his fall through the replacement wheelchair.  Plaintiff was arraigned the next day, October 2, 2013 (Doc. No. 48-5), and was eventually convicted on narcotics charges stemming from his arrest (56.1 Stmt. ¶ 24; *see also* Morales Dep. 21:16–22:5).

B. Procedural History

On October 28, 2013, Plaintiff filed suit against the Officer Defendants and the New York City Police Department's Ninth Precinct, alleging violations of the Americans with Disabilities Act, the Rehabilitation Act, and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) On January 13, 2014, the case was reassigned to this Court. On January 27, 2014, the Court dismissed, *sua sponte*, Plaintiff's claims against the New York City Police Department's Ninth Precinct, which as an entity of the City of New York cannot be sued. (Doc. No. 7 at 2 (citing N.Y. City Charter ch. 17, § 396).) However, the Court allowed Plaintiff's claims to proceed against the City and the Officer Defendants. (*Id.*)

On June 17, 2014, the Court ordered that the case be referred to Magistrate Judge Frank Maas for general pretrial purposes and for dispositive motions. (Doc. No. 13.) Following the completion of discovery, Defendants filed the instant motion for summary judgment on November 30, 2015. (Doc. No. 47.) Defendants also served Plaintiff with notice, pursuant to Local Civil Rule 56.2, apprising Plaintiff of the consequences of his failure to properly respond to the motion. (Doc. No. 51.) On December 12, 2015, Plaintiff wrote Judge Maas asking for an extension of time to file his opposition brief and Local Rule 56.1 Statement. (Doc. No. 52.) On December 21, 2015, Judge Maas granted that extension request and ordered that Plaintiff file a response by January 21, 2016 and that Defendants file a reply no later than February 4, 2016. (*Id.*) In light of Judge Maas's impending retirement, the Court issued an amended order of reference on June 2, 2016 that withdrew the Court's referral of the case to Judge Maas and indicated that the Court would resolve Defendants' motion for summary judgment. (Doc. No. 53.) Because there was no record that Judge Maas's order granting Plaintiff's extension request had actually been mailed to Plaintiff, the Court granted Plaintiff a further extension – to June 27, 2016 – of the deadline to file his response

4

to Defendants' summary judgment motion.  (Doc. No. 54.)  On June 14, 2016, the Court granted Plaintiff another extension of that deadline to July 5, 2016 and, as a courtesy to Plaintiff, directed the Clerk to send to Plaintiff additional copies of Defendants' motion for summary judgment, declaration in support of summary judgment and accompanying exhibits, Local Civil Rule 56.1 Statement, memorandum in support of summary judgment, notice to a pro se litigant regarding summary judgment, and copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (Doc. No. 55.)

Plaintiff submitted his opposition to Defendants' motion on July 5, 2016.  (Doc. Nos. 56, 57, 58.)  While Plaintiff made his submission in the form of an affidavit and attached a copy of his medical records, Plaintiff failed to submit a statement pursuant to Local Civil Rule 56.1 that responded, in correspondingly numbered paragraphs, to the paragraphs set forth in Defendants' Local Civil Rule 56.1 Statement.  On July 18, 2016, Defendants filed their reply to Plaintiff's submission.  (Doc. No. 61.)

## II.  LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving

party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of New York*, No. 04-

6

cv-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006); *accord Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund,* No. 03-cv-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005).  Nevertheless, the Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Holtz*, 258 F.3d at 73.  Moreover, the Court is obligated to construe the submissions of *pro se* parties liberally.  *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Here, Plaintiff submitted an affidavit in opposition to summary judgment but failed to submit a responsive Rule 56.1 statement, even though Defendant, pursuant to Local Civil Rule 56.2, sent Plaintiff notice of his obligations under Rule 56 and Local Civil Rule 56.1 (Doc. No. 51), and the Clerk, as a courtesy to Plaintiff, sent Plaintiff additional copies of Rule 56, Local Civil Rule 56.1, and all of Defendants' submissions in support of summary judgment at the Court's direction. (Doc. No. 55).  Nevertheless, in light of Plaintiff's *pro se* status, the Court has exercised its discretion to independently review the record.  *See Holtz*, 258 F.3d at 73.

### III. Discussion

#### A. Section 1983

The Court first considers Plaintiff's claim, brought pursuant to Section 1983, that Defendants violated his rights under the Constitution by forcing him to ride in the back of the police van without his wheelchair and use a substitute wheelchair that turned out to be defective. To prevail on a claim brought under Section 1983, a plaintiff must prove, by preponderance of the evidence, "(1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (internal quotation marks omitted).

As an initial matter, Plaintiff's claims under Section 1983 against the City must fail.  For the City to be vicariously liable for its agents' alleged constitutional torts, Plaintiff must show "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  Here, Plaintiff has not alleged, let alone pointed to any proof, that the Officer Defendants' conduct was pursuant to "an official policy or custom" of refusing to accommodate disabled persons during the course of an arrest.  To the contrary, Plaintiff alleges, without elaboration or citation, that the Officer Defendants failed to comply with the City's "Policy/Procedure in place" for accommodating wheelchair-bound arrestees.  (Opp'n 7.)  Accordingly, Plaintiff's claims under Section 1983 against the City are dismissed.

Next, the Court turns to Plaintiff's claims against the Officer Defendants.  Construing Plaintiff's submissions liberally, the Court interprets the Complaint to allege that the Officer Defendants violated Plaintiff's rights under the Fourth Amendment to be free from "unreasonable and therefore excessive force by a police officer in the course of effecting an arrest."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010); *see also Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.").[2]   "The Fourth Amendment test of reasonableness is one of objective reasonableness."  *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (internal quotation marks omitted).  In assessing whether a particular use of force was objectively reasonable, a court

---

[2] In his Complaint, Plaintiff conclusorily alleges that Defendants violated his rights under the Fifth Amendment (Compl. 3), but Plaintiff does not allege any specific right recognized under that amendment violated by Defendants. Furthermore, while Plaintiff alleges that Defendants violated his rights under the Eighth Amendment in his opposition affidavit (Opp'n 4), the protections of the Eighth Amendment do not attach until conviction, *see Graham*, 490 U.S. at 398–99; *Whitley v. Albers*, 475 U.S. 312, 318 (1986), and were therefore inapplicable at the time of Plaintiff's arrest.

must consider the totality of the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "without regard to [the officer's] underlying intent or motivation." *Graham*, 490 U.S. at 396–397. Furthermore, a court must "allow[] for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397. Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal citation omitted). It is also well established that "[n]egligence is not a basis of liability for constitutional torts," including excessive force claims under the Fourth Amendment. *O'Neill v. Krzeminski,* 839 F.2d 9, 11 n.1 (2d Cir.1988); *see also Gutierrez v. City of New York*, No. 13-cv-3502 (JGK), 2015 WL 5559498, at *8 (S.D.N.Y. Sept. 21, 2015). To prevail, "[a] plaintiff must present sufficient evidence to establish that 'the alleged use of force is objectively sufficiently serious or harmful enough to be actionable.'" *Washpon v. Parr*, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (quoting *Cunningham v. Rodriguez*, No. 01-cv-1123 (DC), 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002)). Therefore, "[a] *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), and "*de minimis* injury can serve as conclusive evidence that *de minimis* force was used," *Washpon*, 561 F. Supp. 2d at 407. Accordingly, "numerous courts have held that where plaintiff's injuries are *de minimis*, the claim of excessive force cannot rise to the level of a constitutional violation as a matter of law." *Cunningham v. New York City*, No. 04-cv-10232 (LBS), 2007 WL 2743580, at *6 (S.D.N.Y. Sept. 18, 2007) (collecting cases).

Here, Plaintiff complains, at bottom, that the Officer Defendants unreasonably prevented him from remaining in his motorized wheelchair on the way to the police precinct, and instead

"tossed" him on the floor of a police van, forced him to ride without a seat belt during the less-than-mile-long car ride to the police station, and, upon arriving at the police station, ordered Plaintiff to use a replacement wheelchair that broke. (*See* Compl. 3; Opp'n 4.) But Plaintiff admitted at his deposition that prior to his arrest, he sold ten bags of heroin and utilized the cushion part of his motorized wheelchair to hide approximately sixteen additional bags of heroin. (Morales Dep. 32:2–24.) Furthermore, Defendants attest, and Plaintiff does not dispute, that his motorized wheelchair could not have fit into the van and was also too heavy to be manually lifted into the van. (*See* Altieri Aff. ¶ 11.) Accordingly, in light of the Officer Defendants' "need to preserve evidence" relevant to Plaintiff's narcotics crimes, *see Illinois v. McArthur*, 531 U.S. 326, 336 (2001), it hardly seems objectively unreasonable for the Officer Defendants to have confiscated Plaintiff's wheelchair. And while it could be argued that the Officer Defendants should have waited at the scene for a proper emergency vehicle rather than "toss" Plaintiff into the back of a police van, the fact remains that Plaintiff alleges no actionable injuries from having been transported in the police van without protective equipment. (*Cf.* Opp'n 4 (claiming injury to Plaintiff's neck and back only in connection with his fall through the wheelchair); Compl. at 3 (same).)

With respect to Plaintiff's fall through the replacement manual wheelchair while the Officer Defendants were lowering him into it, the parties agree that the wheelchair appeared stable and appeared to lack defects prior to Plaintiff's fall. (56.1 Stmt. ¶ 11; Altieri Aff. ¶¶ 17–18; *see also* Morales Dep. 41:6–14.) Viewing the evidence "from the perspective of a reasonable officer on the scene," rather than with "20/20 vision of hindsight," *see Graham*, 490 U.S. at 396–397, it is clear that the Officer Defendants' conduct was, at worst, negligent, which is insufficient to sustain a claim for an excessive force claim, *see O'Neill*, 839 F.2d at 11 n.1. Furthermore, while

Plaintiff claims that he "suffered neck and back injuries" and "complained of pain and received medication for [n]eck and [b]ack pain" as a result of his fall through the wheelchair (Opp'n 4; *see also* Morales Dep. 45:14–24), the medical records from Plaintiff's pre-arraignment medical examination at Bellevue Hospital, which took place mere hours after his arrest, indicate that Plaintiff told hospital officials that he did not suffer any pain (Doc. No. 48-7 at 2, 4, 6). Tellingly, Plaintiff fails to point to any other medical documentation substantiating his claims that he was seriously injured as a result of his fall. The Court therefore concludes that Plaintiff's injury was not "objectively sufficiently serious or harmful enough to be actionable," *Washpon*, 561 F. Supp. 2d at 406 (internal quotation marks omitted), and as a result, his claim fails as a matter of law, *see Cunningham*, 2007 WL 2743580, at *6; *see also D'Attore v. City of New York*, No. 10-cv-6646 (WHP), 2013 WL 1180395, at *5 (S.D.N.Y. Mar. 15, 2013) (finding, as a matter of law, that the force applied by officer was not objectively unreasonable where the medical record from the day after the incident indicated that plaintiff did not complain of discomfort); *Cunningham*, 2002 WL 31654960, at *5 (S.D.N.Y. Nov. 22, 2002) (dismissing plaintiff's excessive force claims based on allegations defendant "hit [plaintiff] in the back and face," where medical records indicated Plaintiff had "no injuries or complaints").

In sum, the Court concludes, as a matter of law, that the Officer Defendants' decision to confiscate Plaintiff's wheelchair was objectively reasonable, and that while the Officer Defendants might be faulted for forcing Plaintiff to ride in the back of the police van without restraints, Plaintiff fails to point to any cognizable injuries he suffered from the short ride to the Ninth Precinct. Similarly, the Officer Defendants' use of a replacement wheelchair from Barrier Free Living was at worst, negligent, and Plaintiff's injuries resulting from his fall through the wheelchair were *de*

*minimis* at most.  Accordingly, the Court grants Defendants summary judgment on Plaintiff's claims brought under Section 1983.[3]

### B.  Americans with Disabilities Act and Rehabilitation Act

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act, which applies to programs and entities that receive federal government funding, similarly "prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified' disabled individuals."  *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting 29 U.S.C. § 794(a)).  Plaintiff's claims under the ADA and Rehabilitation Act, like his claims under Section 1983, are based on the Officer Defendants' decisions to force him to ride in the back of the police van without his wheelchair and without protective equipment and to use a substitute wheelchair that broke.  For the reasons set forth below, the Court grants in part and denies in part Defendants' motion with respect to Plaintiff's ADA and Rehabilitation Act claims.

### 1.  Claims Against the Officer Defendants

As an initial matter, Plaintiff's claims against the Officer Defendants cannot be sustained for the simple reason that individual defendants may not be sued for money damages under either statute. *Askins v. N.Y.C. Transit*, No. 11-cv-6371 (PGG), 2013 WL 142007, at *4 (S.D.N.Y. Jan. 8, 2013) ("[P]laintiffs may not bring suits for money damages against individual defendants under the ADA." (collecting authorities)); *Fate v. Goord*, No. 11-cv-7493 (RWS), 2012 WL 3104884,

---

[3] While Defendants argue in the alternative that they are entitled to qualified immunity (Doc. No. 50 ("Mem.") 9–10), the Court need not address this argument since it finds, as a matter of law, that Defendants did not violate any of Plaintiff's rights under the Constitution.

at *4 (S.D.N.Y. July 31, 2012) ("Similarly, there is generally no individual liability for money damages, even in official capacity suits, under the Rehabilitation Act.").  And while individual officers may be sued in their official capacity for prospective injunctive and declaratory relief, *Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009), Plaintiff here has made no request for injunctive or declaratory relief in either his complaint or in his submission in opposition to summary judgment, which is itself fatal, *see Fox v. State Univ. of New York*, 497 F. Supp. 2d 446, 450 (E.D.N.Y. 2007) (denying injunctive relief to *pro se* plaintiff who did not request "any type of prospective, injunctive relief" in her memorandum of law, amended complaint, or affidavits).

Even if Plaintiff *had* sought an injunction or declaratory judgment in his pleadings, he would lack standing to pursue these remedies, because a plaintiff seeking injunctive relief "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004); *see also Rapa v. City of New York*, No. 15-cv-1916 (JMF), 2015 WL 5671987, at *1–2 (S.D.N.Y. Sept. 25, 2015) (underscoring that "a plaintiff must show a likelihood of future injury" to have standing to pursue injunctive relief").  Here, Plaintiff can point to no facts suggesting that he will likely be arrested once again in the future by these or any other officers such that he will require accommodations of his paraplegic condition during post-arrest transportation.  In other words, Plaintiff can "only speculate about future encounters with the police." *Williams v. City of New York*, 34 F. Supp. 3d 292, 297 (S.D.N.Y. 2014) (dismissing disabled person's claim for injunctive relief under ADA premised on police officers' failure to provide a sign language interpreter, notwithstanding fact that there was "some chance that the [p]laintiff *might* find herself arrested again by police officers who do not offer her a sign language interpreter"); *see also Rapa*, 2015 WL 5671987, at *1–2 (similarly dismissing claims for injunctive relief premised on the police's alleged failure to procure

an ASL interpreter).  Therefore, Plaintiff lacks standing to pursue injunctive relief against the Officer Defendants or, for that matter, the City.  For similar reasons, Plaintiff also lacks standing to pursue a claim for declaratory relief.  *See McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004) (noting that a plaintiff who seeks declaratory relief also "cannot rely on past injury" to establish standing, "but must show a likelihood that he or she will be injured in the future").

Accordingly, because Plaintiff is barred from pursuing a claim for damages, injunctive relief, and declaratory relief against the Officer Defendants, and since his complaint cannot be construed to request any other remedies under either statute, Plaintiff's claims under the ADA and Rehabilitation Act against the Officer Defendants must be dismissed.  Furthermore, Plaintiff's claims for injunctive and declaratory relief under those statutes against the City are likewise dismissed.

## 2.  Claims for Damages Against the City

The Court next turns to Plaintiff's claims for damages against the City under Title II of the ADA and Section 504 of the Rehabilitation Act.  Because the two statutes contain "nearly identical" standards, the Court considers the merits of Plaintiff's claims under both provisions together.  *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196 (2d Cir. 2014); *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999).  To prevail on his claims under Title II of the ADA and Section 504 of the Rehabilitation Act, Plaintiff must show that:  "(1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability." *McElwee*, 700 F.3d at 640.  In addition, to recover under the Rehabilitation Act, "a plaintiff must

show that the defendants receive federal funding." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). Moreover, the law is clear that municipalities may be held vicariously liable for violations of Title II of the ADA and Section 504 of the Rehabilitation Act committed by their agents. *See Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574–75 (5th Cir. 2002); *Duvall v. County of Kitsap,* 260 F.3d 1124, 1141 (9th Cir. 2001); *see also Palmer v. City of Yonkers*, 22 F. Supp. 2d 283, 287 (S.D.N.Y. 1998) ("[G]eneral vicarious liability principles apply under the ADA.").

Here, there is no dispute that Plaintiff, who is paraplegic, is "disabled" under both statutes, and that the City of New York, as a public entity that receives federal assistance, is subject to both statutes. *See, e.g.*, *Sayers v. City of New York*, No. 04-cv-3907 (CPS), 2007 WL 914581, at *7 (E.D.N.Y. Mar. 23, 2007). Thus, Plaintiff satisfies the first two required elements with respect to both the ADA and Rehabilitation Act claims. Therefore, Defendants' motion turns on the third element – namely, whether plaintiff was "denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability." *McElwee*, 700 F.3d at 640.

Although the United States Court of Appeals for the Second Circuit has yet to address the issue squarely, numerous courts within this Circuit have "[i]n the context of arrests . . . recognized claims" under the ADA and Rehabilitation Act "where police execute a proper arrest but fail to reasonably accommodate [a plaintiff's] disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees,'" *Wagner v. City of New York*, No. 14-cv-2521 (VEC), 2015 WL 5707326, at *7 (S.D.N.Y. Sept. 28, 2015) (quoting *Taylor v. Schaffer*, No. 14-cv-123 (JGM), 2015 WL 541058, at *6 (D. Vt. Feb. 10, 2015)); *accord Williams v. City of New York*, 121 F. Supp. 3d 354, 368 (S.D.N.Y. 2015) ("The only reasonable interpretation of Title II is that law enforcement officers who are acting in an investigative or custodial capacity are

15

performing 'services, programs, or activities' within the scope of Title II."); *Valanzuolo v. City of New Haven*, 972 F. Supp. 2d 263, 273–74 (D. Conn. 2013) ("Under the ADA, law enforcement officers have a duty to 'provide arrestees who are disabled with reasonable accommodations once an arrest of a disabled person had been accomplished.'" (quoting *Ryan v. Vt. State Police*, 667 F. Supp. 2d 378, 389 (D. Vt. 2009)); *Anthony v. City of New York*, No. 00-cv-4688 (DLC), 2001 WL 741743, at *11 (S.D.N.Y. July 2, 2001) (concluding that "police officers' response to the 911 call and seizure of [plaintiff] for psychiatric evaluation are police activities or services and are, thus, covered by the ADA"), *aff'd on other grounds*, 339 F.3d 129 (2d Cir. 2003). In addition, several courts have specifically concluded that post-arrest transportation of an arrestee is "'a service, activity, or benefit' of a police department and is thus covered under the ADA." *Woods v. City of Utica*, 902 F. Supp. 2d 273, 280 (N.D.N.Y. 2012); *Ryan*, 667 F. Supp. 2d at 389; *accord Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998). Tellingly, Defendants do not contest the applicability of the Title II of the ADA and Section 504 of the Rehabilitation Act to the events at issue in this case. Accordingly, the Court concludes that the arrest and post-arrest transportation of Plaintiff at issue in this case each constituted a "service," "program," or "activity" under those statutes.

As the Second Circuit has explained, "a defendant discriminates" under Title II of the ADA and the Rehabilitation Act "when it fails to make a reasonable accommodation that would permit a qualified disabled individual 'to have access to and take a meaningful part in public services.'" *McElwee*, 700 F.3d at 640 (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)). In the context of an arrest and post-arrest transportation, a defendant may violate these statutes by failing to transport an arrestee "in a safe and appropriate manner." *Gorman*, 152 F.3d at 913; *Nicholas v. City of Binghamton*, No. 10-cv-1565 (TJM), 2012 WL 3261409, at *14 (N.D.N.Y. Aug. 8, 2012). "Whether a disabled individual succeeds in proving discrimination

16

under Title II of the ADA will depend on whether the officers' accommodations were reasonable under the circumstances." *Williams*, 121 F. Supp. 3d at 368.  In assessing the reasonableness of an accommodation, the Court must consider "whether, given criminal activity and safety concerns, any modification of police procedures is reasonable before the police physically arrest a criminal suspect, secure the scene, and ensure that there is no threat to the public or officer's safety," which is "a highly fact-specific inquiry." *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1085 (11th Cir. 2007).

Here, for the reasons already set forth above, the Court finds that Defendants' use of the substitute wheelchair obtained from Barrier Free Living upon Plaintiff's arrival at the Ninth Precinct was a reasonable accommodation given the circumstances of Plaintiff's arrest.  Plaintiff admitted under oath to selling ten bags of heroin just minutes before police arrested him and to hiding sixteen bags of heroin in his motorized wheelchair at the time of his arrest.  (Morales Dep. 32:2–24.)  Under the circumstances, it was clearly reasonable for Defendants to provide a different wheelchair in light of the need to preserve evidence relevant to Plaintiff's narcotics crimes.  And while the replacement wheelchair Altieri obtained from Barrier Free Living ended up breaking, both Plaintiff and Altieri testified that the wheelchair appeared stable and without defects and that as soon as Plaintiff fell through the wheelchair, he was moved back into his motorized wheelchair. (56.1 Stmt. ¶¶ 11, 15; Altieri Aff. 17–18, 22–23; *see also* Morales Dep. 41:6–14.)  Plaintiff's allegations, which at most sound in negligence, fail to rise to the level of "deliberate indifference" required to sustain a claim for money damages under the ADA and Rehabilitation Act.  *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (plaintiff under ADA and Rehabilitation Act must prove "deliberate indifference to the strong likelihood [of] a violation" in order to obtain money damages); *see also Poe v. Leonard*, 282 F.3d 123, 140 n.14 (2d Cir. 2002)

(underscoring that "gross negligence" and "deliberate indifference . . . represent different degrees of intentional conduct on a continuum").

However, the Court concludes that summary judgment would be inappropriate regarding the Officer Defendants' decision to place Plaintiff in the back of the police van without safety equipment just after his arrest.  Plaintiff attests, and Defendants do not contest, that while in the back of the police van on the way to the Ninth Precinct, Plaintiff was "not provided [s]afety [r]estraints," which caused him to "bounce" on the floor of the van and created risks to his safety. (Opp'n 4; *see also* Morales Dep. Morales Dep. 38:3–8.)  Although Plaintiff does not allege any physical injury that he incurred as a result of this brief trip, the Court nonetheless finds there to be a genuine dispute of material fact as to whether the Officer Defendants failed to reasonably accommodate Plaintiff's paraplegia "by transporting [him] in a safe and appropriate manner" to the Ninth Precinct, *Nicholas*, 2012 WL 3261409, at *14, thereby causing Plaintiff "to suffer greater . . . indignity than other arrestees" because of the lack of safety equipment or a proper vehicle, *id.*; *Wagner*, 2015 WL 5707326, at *7.  Defendants have simply not explained why they transported Plaintiff to the Ninth Precinct in the back of the police van without any safety equipment and did not, for instance, wait for a vehicle capable of safely transporting a paraplegic with or without a wheelchair.  *See Gorman*, 152 F.3d at 913 (denying summary judgment where police officers transported paraplegic arrestee in police van that was not equipped with wheelchair restraints); *Sayers*, 2007 WL 914581, at *8 (denying summary judgment in light of the "City's failure to address whether plaintiff was properly transported").

The Court recognizes the possibility that, "given criminal activity and safety concerns" surrounding Plaintiff's arrest, *see Bircoll*, 480 F.3d at 1085, such an accommodation might have unduly burdened law enforcement.  If, for example, the Officer Defendants reasonably feared that

Plaintiff had armed confederates who posed a threat to their safety, their decision not to wait for alternative transportation before evacuating the scene would have been reasonable.  *See Waller ex rel. Estate of Hunt v. Danville*, 556 F.3d 171, 175 (4th Cir. 2009) ("Accommodations [under the ADA] that might be expected when time is of no matter become unreasonable to expect when time is of the essence."); *see also McElwee*, 700 F.3d at 641 ("An accommodation is not reasonable if it would impose an undue hardship on a program's operation.").  Nevertheless, Defendants have failed to introduce any evidence to permit the Court to draw such an inference.

Accordingly, the Court grants Defendants' motion for summary judgment with respect to all of Plaintiff's claims under the ADA and Rehabilitation Act against the Officer Defendants and with respect to Plaintiff's claims for injunctive and declaratory relief under those statutes against the City.  However, the Court denies the motion for summary judgment under the ADA and Rehabilitation Act with respect to Plaintiff's claims against the City for damages pertaining to his transportation to the Ninth Precinct.

### C.  Pendent State-Law Claims

To whatever extent Plaintiff's *pro se* submissions can be construed to bring state-law claims for negligence or other torts (*see* Opp'n 4 (reciting the elements of a claim for negligence under New York law)), the Court dismisses these claims because of Plaintiff's failure to comply with New York's notice-of-claim requirements.  In order to state viable claims under New York law against the City and the Officer Defendants, Plaintiff was required to plead:  (1) that he "has served [a] notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim."  *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999).  New York's notice-of-claim requirements are "construed strictly," even against *pro se*

19

plaintiffs. *See, e.g.*, *Watkins v. Ruscitto*, No. 14-cv-7504 (AJP), 2016 WL 3748498, at \*10 (S.D.N.Y. July 11, 2016); *Berry v. Vill. of Millbrook*, 815 F. Supp. 2d 711, 724–25 (S.D.N.Y. 2011). Here, Plaintiff filed suit in federal court on October 28, 2013, only twenty-seven days after the date of his arrest. It therefore follows, *a fortiori*, that Plaintiff failed to wait at least thirty days following any notice of claim before bringing suit. Thus, Plaintiff's claims under New York law are dismissed.

### III. Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is granted in part and denied in part. Specifically, all of Plaintiff's claims are dismissed except for his causes of action for damages alleging violations of Title II of the ADA and Section 504 of the Rehabilitation Act against the City in connection with Plaintiff's post-arrest transportation to the Ninth Precinct. The Clerk is respectfully directed to terminate the motion pending at docket number 47.

SO ORDERED.

Dated:      September 7, 2016
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/7/16_

20